1  Ronald S. Kravitz, Esq. (SBN: 129704)
       rkravitz@linerlaw.com
2  Matthew Borden, Esq. (SBN: 214323)
       mborden@linerlaw.com
3  LINER YANKELEVITZ
   SUNSHINE & REGENSTREIF LLP
4  199 Fremont Street, 20th Floor
   San Francisco, CA 94105-2255
5  Telephone: (415) 489-7700
   Facsimile: (415) 489-7701
6
   Teri T. Pham, Esq. (SBN: 193383)
7      tpham@linerlaw.com
   LINER YANKELEVITZ
8  SUNSHINE & REGENSTREIF LLP
   1100 Glendon Avenue, 14th Floor
9  Los Angeles, California 90024-3503
   Telephone: (310) 500-3500
10 Facsimile: (310) 500-3501

11 Attorneys for Plaintiffs
   MAI CHRISTINA PHAM, JOHN PHAM,
12 MAI NGUYEN, and HUNG PERRY NGUYEN

13            **UNITED STATES DISTRICT COURT**

14            **NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 16  Mai Christina Pham, John Pham, Mai Nguyen, and Hung Perry Nguyen, | Case No. C07-05436 JW (HRL) |
| 17  Plaintiffs, | Honorable James Ware |
| 18  vs. | **REPLY IN SUPPORT OF APPLICATION FOR WRIT OF ATTACHMENT** |
| 20  ComUnity Lending Inc., a California corporation; and DOES 1 through 10, inclusive, | Date: December 4, 2007 |
| 21  Defendants. | Time: 1:30 p.m. Courtroom: 8, 4th Floor |

**INTRODUCTION**

Defendant ComUnity Lending Inc. ("ComUnity") fails to establish any justification for its continuing and wrongful seizure and conversion of Plaintiffs' money, and its admissions confirm that the Court should grant Plaintiffs' request for a writ of attachment to protect funds that belong to Plaintiffs. As set forth in the moving papers, and virtually unaddressed in the opposition, the ComUnity Lending, Inc. Non-Qualified Deferred Compensation Plan ("Plan") unambiguously states: "Benefits under this Plan are **immediately payable** in a lump sum **upon a Plan Termination**." (Couch Decl., Ex. B § 8.13 [emphasis added].) It further provides that: "Upon the termination of the Plan, all participants will be 100% vested." (Couch Decl., Ex. B § 10.2.) The Plan terminated on August 10, 2007. Since that time, Plaintiffs have had an unqualified right to their Plan benefits, and Defendant has been holding Plaintiffs' money and ignoring the terms of the Plan to deprive Plaintiffs of their benefits.

Defendant's argument that Plaintiffs' cannot sue for breach of fiduciary duty (Opp. at 6) is a straw man. Top-hat plans are "are unilateral contracts which employees accept by appropriate performance." *Carr v. Nationwide Bank*, 816 F. Supp. 1476, 1488 (N.D. Cal. 1993). Because a top-hat plan "is a unilateral contract, it may not be amended or modified retroactively by the sponsor – after a participant has accepted the plan offer by retiring or other performance specified in the plan." *Id.* Here, Plaintiffs elected to defer salary payments based on ComUnity's promise that it would honor the terms of the Plan when the time came for it to perform. Those terms include unqualified vesting and immediate payment of benefits upon termination of the Plan.

The *only* justification offered by ComUnity is meritless. It claims that § 10.6 of the Plan eliminated its duty to pay Plan benefits because it is now insolvent. (Opp. at 7.) Section 10.6 states that "payment shall be made from the Trust only to the extent the Employer is not at the time of payment insolvent." Nothing in that language divested Plaintiffs of their right to their benefits at the time the Plan terminated, negated ComUnity's duty to pay out benefits immediately upon termination of the Plan, or permitted ComUnity to try to defeat Plaintiffs' rights by delaying the "time of payment" until it supposedly had become insolvent. Moreover, this argument ignores the actual language of § 10.6, which refers to payment "from the Trust." Payment "from the Trust"

1  occurred before any alleged insolvency. After the Trust paid Plaintiffs' benefits to ComUnity
2  (based on ComUnity's representation that it was solvent), ComUnity placed the money in its own
3  accounts, including over $227,000 in an operating account.
4        According to ComUnity's own documents, nothing prevented it from immediately paying
5  Plaintiffs' vested Plan benefits on August 10, 2007, the date ComUnity's Board terminated the Plan
6  (Couch Decl., Ex. D.), or even on September 4, 2007, the date Defendant informed the participants
7  of the termination. (Couch Decl., Ex. G.) ComUnity's own financial statements show that it was
8  solvent on both these dates. (Declaration of Ronald S. Kravitz ("Kravitz Decl."), Ex. 1.) Even
9  ComUnity's November 21 self-serving, subjective effort to "restate" prior balance sheets based on
10 unexplained assumptions (months after payment was due and after this action had been filed) only
11 purports to show insolvency as of September 30.
12       ComUnity intentionally delayed paying Plaintiffs' benefits, while its financial condition
13 deteriorated to the point where it could allege "insolvency" and attempt to keep Plaintiffs' hard-
14 earned deferred compensation for itself. After terminating the Plan on August 10, ComUnity
15 inexplicably waited until August 29 to initiate the transfer of funds from the Trustee to the
16 participants. It waited until September 4 to inform participants of the termination and to circulate
17 distribution request forms. When it received the requests, it altered the forms to reroute the money
18 to itself. By no later than September 17, the Trustee paid millions of dollars in Plan money to
19 ComUnity based on its forgery. (Kravitz Decl., Ex. 2.) At this time, ComUnity was still solvent.
20       ComUnity simply took Plaintiffs' money. It even admits that it posted $227,000 of
21 Plaintiffs' money to one of its operating accounts, refusing to refund this to the segregated account
22 despite repeated promises to do so. (Opp. at 5:19-20.) Since August 10, ComUnity has been
23 holding Plaintiffs' money in constructive trust, and now must return it. Under the Plan and the
24 facts of this case, there is more than a probable validity to Plaintiffs' claims, and the Court should
25 issue a writ of attachment to protect Plaintiffs from further harm.
26
27
28

# ARGUMENT

## I.  THE COURT IS EMPOWERED TO ENFORCE THE PLAN

The Plan is a top-hat plan designed for a small group of management employees. *See*, *e.g.*, *Carr*, 816 F. Supp. at 1486; *Kemmerer v. ICI Americas Inc.*, 70 F.3d 281, 286 (3d Cir. 1995). Although the Plan may be exempt from a number of ERISA's other requirements, "ERISA's enforcement provision clearly permits participants in top hat plans, as well as other covered plans, to bring civil actions to enforce the substantive provisions of the Act or to recover benefits due or otherwise enforce the terms of the plan." *Kemmerer*, 70 F.3d at 286-87 (quotation omitted); *Carr*, 816 F. Supp. at 1487.

Top-hat plans are interpreted as unilateral contracts. *Carr*, 816 F. Supp. at 1488. "Under unilateral contract principles, once the employee performs, the offer becomes irrevocable, the contract is completed, and the employer is required to comply with its side of the bargain. Accordingly, when a participant leaves the employ of the company, the trustee is 'required to determine benefits in accordance with the plan then in effect.'" *Kemmerer*, 70 F.3d at 287 (quoting *Pratt v. Petroleum Prod. Mmgt. Employee Sav. Plan*, 920 F.2d 651, 661 (10th Cir. 1990)).

## II.  DEFENDANT WAS NOT INSOLVENT AT THE TIME PAYMENT WAS DUE

### A.  The Plain Language of the Plan Required ComUnity to Pay Plaintiffs "Immediately" upon the Termination of the Plan

Section 8 of the Plan is entitled "Benefits." This section specifically states: "Benefits under this Plan are immediately payable in a lump sum upon a Plan Termination." (Couch Decl., Ex. B § 8.13.) Although it should go without saying, "'Immediately' means 'without delay.'" *Stillman v. LaMarque*, 319 F.3d 1199, 1202 (9th Cir. 2003) (quoting The American Heritage College Dictionary 679 (3d Ed. 1997)). This is especially true where, as here, the immediate payment is from an employee benefit plan to employees who have been terminated.

ComUnity makes no effort to explain how the term "immediately" could permit any of the delays in which it has engaged here. ComUnity delayed paying Plaintiffs their benefits after electing to terminate the Plan on August 10. ComUnity delayed paying Plaintiffs their benefits after notifying employees that the Plan was terminated as of September 4. When Plaintiffs tried to obtain payment directly from the Trustee, as expressly provided for under section 2(a) of the Trust,

ComUnity forged Ms. Pham's instructions so as to further delay payment.[1]  After the Trustee paid over Plaintiffs' money to ComUnity, ComUnity further delayed paying Plaintiffs their benefits. Even if the term "immediately" were somehow ambiguous – which it is not – any ambiguity would be construed against ComUnity because it drafted the Plan.  *See Blankenship v. Liberty Life Assurance Co.*, 486 F.3d 620, 625 (9th Cir. 2007) (applying doctrine of *contra proferentem* in construing ERISA plan).  Their delays violated the plain language and any reasonable construction of the Benefits provision of the Plan.

### B. Nothing Prevented ComUnity from Making Payment When the Plan Terminated

ComUnity's own Board minutes show that the Board terminated the Plan on August 10, 2007. (Couch Decl., Ex. D.)  It is further undisputed (although the cause for the three-week delay is unknown) that on September 4, ComUnity finally informed Plaintiffs that the Plan had been terminated.  (Couch Decl., Ex. G.)

Defendant's own financial records show that ComUnity was solvent on August 10 and on September 4.  (Kravitz Decl., Ex. 1.)  As such, it is undisputed that they could have paid the money due to Plaintiffs immediately upon termination of the Plan, as required by the Plan, had they so chosen.

Eight days ago, Defendant's "Restructuring Officer" Richard Couch asked an unnamed former officer to retroactively "adjust" ComUnity's financial statement. (Couch Decl. ¶ 5, Ex. A.) According to Couch, after the revisions, the financial statements now show that ComUnity was insolvent as of September 30. (*Id.*)  Leaving aside the validity of the "adjustment," there is simply nothing in any of the materials Defendant has submitted showing that as of the dates at issue, ComUnity was insolvent.

Moreover, Couch's vague and conclusory declaration, in which he "concurs" with the unnamed officer's analysis of "the Company's assets and liabilities as of September 30, 2007 based on a present day fair market valuation in light of the current factual circumstances," offers no

---

[1] Defendants' brief states that there was custom of paying money to ComUnity first.  (Opp. at 5 n.6.)  However, they have cited no evidence for such a proposition.  Furthermore, section 2(c) provides that an employer may make direct payments as they become due but shall notify trustee of decision prior to time amounts were payable.  There is no evidence this occurred, either.

1 meaningful justification for the write-downs, or the methodology that supposedly was employed
2 (e.g., a reference to GAAP or any other procedure).  This analysis is doubly dubious in light of the
3 surrounding circumstances, e.g., the pending litigation, the terms of the Plan and the Trust, and
4 ComUnity's steadfast efforts to avoid its obligations thereunder.  Indeed, under section 3(b)(1) of
5 the Trust Agreement (Couch Decl., Ex. C), "the Employer shall have the duty to inform the Trustee
6 in writing of the Employer's insolvency."  ComUnity never did so.  Had it done so, it would not
7 have been able to seize Plaintiffs' money.

8      ComUnity also cites a provision in section 10 of the Plan, entitled "Miscellaneous," to
9 argue that Plan prohibits it from paying Plaintiffs their money because ComUnity is now allegedly
10 insolvent.  (Opp. at 7.)  The precise language upon which they rely reads:  "The vested Account
11 balance of a Participant shall be paid from the Trust only to the extent the Employer is not at the
12 time of payment insolvent."  (Couch Decl., Ex. B § 10.6.)  As an initial matter, their reliance on
13 this provision is misplaced because it does not purport to eliminate or diminish the duty to pay
14 immediately (when ComUnity indisputably was solvent) or otherwise render the substantive
15 provisions in section 9 of the Plan meaningless.

16      Furthermore, § 10.6 is inapplicable for the separate and independent reason that the
17 "payment from the Trust" was made when ComUnity crossed out Plaintiffs' payment instructions,
18 and ordered the Trustee to pay over the money directly to ComUnity.  The payments from the Trust
19 occurred by no later than September 17, which was before ComUnity even claims to have become
20 insolvent.

21      Finally, section 10.6 is further inapplicable because Plaintiffs' rights to their benefits had
22 vested without qualification on August 10, at the time of the termination of the Plan.  The Plan
23 specifically states that once it terminated, Plaintiffs had an unqualified right to their benefits.
24 Section 7.1, entitled "Vesting," provides that while the Plan was in effect, a participant's rights
25 were subject to those of the employer's creditors.  It states:  "The value of a Participant's Account
26 shall be fully vested at all times subject, however, to the reach of the Employer's creditors in the
27 event of insolvency."  However, the Plan further explains that "Upon the termination of the Plan,
28 all participants will be 100% vested," without reference to any qualifications whatsoever.  (Couch

Decl., Ex. B § 10.2.) As such, Plaintiffs' rights to their Plan benefits were not subject to creditors' claims as of August 10, when the Plan terminated, and ComUnity indisputably was solvent.

### C. Defendant Holds Plaintiffs' Benefits in Constructive Trust

Top-Hat plans are subject to ERISA's enforcement requirements. *Carr*, 816 F. Supp. at 1486 ("Top Hat plans remain subjection to the enforcement provisions of ERISA codified at 29 U.S.C. § 1132(a)"). The broad remedial provisions of ERISA permit the Court to impose a constructive trust over wrongfully withheld benefits. *E.g.*, *Waller v. Blue Cross*, 32 F.3d 1337, 1339 (9th Cir. 1994) (quoting (*Amalgamated Clothing & Textile Workers v. Murdock*, 861 F.2d 1406, 1419 (9th Cir. 1988)) (alternation in original) ("'ill-gotten profits [are] held in a constructive trust for plan participants and beneficiaries [and] may be construed as equitably vested benefits under an ERISA plan'"). Such a remedy is more than warranted here given ComUnity's wrongful seizure and conversion of Plaintiffs' funds.

### CONCLUSION

For all of the foregoing reasons, there is more than "probable validity" to Plaintiffs' claims; there is undisputed evidence showing that ComUnity breached its clear obligations under the Plan. Plaintiffs are therefore entitled to a writ of attachment, especially given ComUnity's history of trying to subvert Plaintiffs' rights under the Plan.

Dated: November 29, 2007

LINER YANKELEVITZ
SUNSHINE & REGENSTREIF LLP
Ronald S. Kravitz
Mathew Borden
199 Fremont Street, 20th Floor
San Francisco, CA 94105

LINER YANKELEVITZ
SUNSHINE & REGENSTREIF LLP
Teri T. Pham
1100 Glendon Avenue, 14th Floor
Los Angeles, California 90024

By: _____/s/Ronald S. Kravitz_____
        Ronald S. Kravitz

Attorneys for Plaintiffs
MAI CHRISTINA PHAM, JOHN PHAM,
MAI NGUYEN, and HUNG PERRY
NGUYEN

6                   Case No. C07-05436 JW (HRL)
REPLY ISO WRIT OF ATTACHMENT
0036012/001/ 35049v03